IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ROLANDIS CHATMON,
ADC #140078                                                                                     PLAINTIFF

V.                              CASE NO. 5:19-CV-365-JM-BD

DEXTER PAYNE, *et al*.                                                                      DEFENDANTS

### RECOMMENDED DISPOSITION

**I.      Procedures for Filing Objections:**

This Recommendation for the dismissal of Mr. Chatmon's claims has been sent to Judge James M. Moody Jr. Any party may file written objections. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt the Recommendation without independently reviewing the record. By not objecting, the parties may waive any right to appeal questions of fact.

**II.     Background:**

Rolandis Chatmon, an Arkansas Division of Correction (ADC) inmate, filed this civil rights lawsuit without the help of a lawyer. (Doc. No. 2) Mr. Chatmon claims that Defendants Brown, Lloyd, and Swopes used excessive force against him and failed to protect him from harm.[1]

---

[1] The Court previously dismissed Mr. Chatmon's claims against Defendants Carroll, Gibson, Shipman, Payne, Jackson, Lloyd, Thompson, and Burton. (Doc. No. 37)

Defendants have now moved for summary judgment on the remaining claims. (Doc. No. 69) Mr. Chatmon has responded to the motion; and Defendants have replied to Mr. Chatmon's response. (Doc. Nos. 76, 77, 78)

**III.** **Discussion:**

A. Standard

A party is entitled to summary judgment if—but only if—the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56 and *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017). Because Defendants Brown, Lloyd, and Swopes are the moving parties, the Court construes any disputed facts in a light favorable to Mr. Chatmon.

B. Analysis

1. Factual Background

In his complaint, Mr. Chatmon alleges that, on August 22, 2019, Defendant Swopes approached his cell and told him to pack his personal property because he was being moved to isolation on behavior control. When it was time for Mr. Chatmon to leave his cell, he refused.

Defendant Swopes left Mr. Chatmon's cell, but later returned with Defendants Brown, Lloyd, and Burton. Defendants Lloyd and Brown ordered Mr. Chatmon to submit to restraints so that officers could remove him from his cell. Mr. Chatmon continued to refuse the officers' orders. When Mr. Chatmon continued to refuse restraints, Defendants deployed a chemical agent into his cell.

According to Mr. Chatmon's deposition testimony, immediately before the incident, Officer Trice was conducting laundry call. Mr. Chatmon asked Officer Trice to add certain inmates to his telephone list. Officer Trice allegedly began calling Mr. Chatmon names; and Mr. Chatmon then refused to allow her to shut his trap door. He testified that he refused to allow Officer Trice to shut his trap door so that she would have to call a supervisor, which would give him a chance to complain about Officer Trice's behavior. (Doc. No. 69-1 at pp.8-10) According to Mr. Chatmon, when Defendant Swopes arrived, she closed Mr. Chatmon's trap door and told Officer Trice to act professionally. (Doc. No. 69-1 at p.14)

Two hours later, Defendant Swopes returned to Mr. Chatmon's cell and told him that he was being moved to isolation for behavior control. (Doc. No. 69-1 at p.4) Defendant Swopes instructed Mr. Chatmon to gather his belongings except for his mattress and blanket. Mr. Chatmon did not comply with this order. (Doc. No. 69-1 at pp.14-15)

Mr. Chatmon further testified that the Defendants never "opened the trap to allow me to comply with any of the orders." (Doc. No. 69-1 at p.16) According to Mr. Chatmon, Defendants came to his cell intent on using a chemical agent against him, regardless of his compliance. (Doc. No. 69-1 at p.16) He stated that he was in "survival resistance" mode at that point and attempted to stop the spread of the chemical agent he expected Defendants to deploy. (Doc. No. 69-1 at p.20) He covered his face with a towel and covered his trap door with his jump suit. (Doc. No. 69-1 at p. 19)

According to Mr. Chatmon, Defendant Brown told him to remove the towel from his face and the mat from his door.[2] (Doc. No. 69-1 at p.22) He refused to do so. Mr. Chatmon insists that he would have complied with a direct order to submit to restraints if the Defendants had opened his trap door. (Doc. No. 69-1 at p. 23) He concedes, however, that Defendant Brown warned him that a chemical agent would be used if he continued to refuse to comply with direct orders. (Doc. No. 69-1 at p.26) He also admits that he never gave Defendant Brown any indication that he was going to comply with his orders. (Doc. No. 69-1 at p.28)

Defendant Brown administered a single burst of chemical agent that lasted several seconds. (Doc. No. 69-1 at p.28) Mr. Chatmon concedes that, if he had not reached out to grab the chemical agent tube, his body would not have come into contact with the irritant. (Doc. No. 69-1 at p. 28)

After Defendant Brown deployed the chemical agent, Mr. Chatmon told Defendants that he could not breathe and asked them to open the cell door. (Doc. No. 69-1 at p.25) Defendant Brown instructed Mr. Chatmon to strip down before he could be restrained and transported. (Doc. No. 69-1 at p.25) Mr. Chatmon complied, and Defendants escorted him to the shower to be decontaminated. Following the incident, Mr. Chatmon did not request any medical treatment. (Doc. No. 69-1 at p.34)

Mr. Chatmon testified that Defendant Swopes did not use any force against him; rather, she allegedly filmed the incident. (Doc. No. 69-1 at p.21) He alleges, however,

---

[2] Mr. Chatmon explains that he was not using his mat to cover the trap door; rather, he was using his jumpsuit. (Doc. No. 69-1 at p.18)

4

that she "orchestrated the whole ordeal." (Doc. No. 69-1 at p.21) Mr. Chatmon further testified that Defendant Lloyd did not use any force against him. (Doc. No. 69-1 at p.21)

As shown on the video recording of the incident, Defendant Brown instructs Mr. Chatmon to remove the mat from his trap door and submit to restraints. Both Defendants Brown and Swopes warn Mr. Chatmon that a chemical agent will be used if he continues to refuse to comply with their direct orders. Mr. Chatmon is given several direct orders to come out of his cell. Mr. Chatmon can be heard stating that he "ain't did nothing." Defendant Brown then states, "so you're not going to submit to restraints."

On the video recording, Mr. Chatmon gives no indication that he intends to comply with the Defendants' orders. At that point, Defendant Brown deploys a chemical agent into the cell. During the entire incident, Mr. Chatmon appears agitated and defiant.

2. Excessive-Force Claim

To prevail on his excessive-force claim, Mr. Chatmon must prove that Defendants used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 112 S. Ct. 995, 998 (1992); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). To act "maliciously" means "taking a course of action, without just cause or reason, that was intended to injure the inmate." *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted). An officer who acts "sadistically" engages in "extreme or excessive cruelty" or "delight[s] in cruelty." *Id*.

In deciding Defendants' motion for summary judgment, the Court will view the facts in a light most favorable to Mr. Chatmon. This does not mean, however, that the

Court must "accept unreasonable inferences or sheer speculation as fact." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir.), cert. denied, 543 U.S. 956, 125 S.Ct. 436 (2004); see Scott, 550 U.S. at 380, 127 S.Ct. 1769.

Based on the undisputed evidence in the record, the excessive-force claims fail as a matter of law. The evidence reveals that Mr. Chatmon repeatedly refused the Defendants' direct orders to remove the covering from his trap door and submit to restraints. Defendant Brown warned Mr. Chatmon that he would use a chemical agent if Mr. Chatmon did not comply with officers' orders. Only after this warning did Defendant Brown administer a burst of chemical spray into Mr. Chatmon's cell. Mr. Chatmon admits that he would have not come into physical contact with the chemical agent had he not grabbed the tube.

The video recording and Mr. Chatmon's own testimony reveal that he did not intend to comply with the Defendants' orders. No reasonable fact-finder would conclude that the Defendants applied force "maliciously or sadistically to cause harm." Rather, the force applied appears reasonably related to the need to control a "recalcitrant" inmate. *Burns v. Eaton*, 752 F.3d 1136, 1139-40 (8th Cir. 2000).[3]

---

[3] Because Mr. Chatmon's excessive-force claim fails as a matter of law, Defendants are also entitled to judgment as a matter of law on Mr. Chatmon's failure-to-protect claims. If there was no excessive force, there was no call to protect Mr. Chatmon from the use of excessive force.

## IV. Conclusion:

Defendants' motion for summary judgment (Doc. No. 69) should be GRANTED. Mr. Chatmon's claims should be DISMISSED, with prejudice.

DATED, this 12th day of April, 2021.

_____
UNITED STATES MAGISTRATE JUDGE